The **STATE OF SOUTH CAROLINA,**
Plaintiff,

v.

Leonard **DAVIDMAN** and Nathaniel Lee,
Defendants.

**Civ. A. No. CH–65–20.**

United States District Court
D. South Carolina,
Charleston Division.

Feb. 12, 1966.

---

Daniel R. McLeod, Atty. Gen., Everett N. Brandon, Asst. Atty. Gen., Columbia, S. C., Julian S. Wolfe, Solicitor, First Judicial Circuit, Orangeburg, S. C., for the State.

Ernest A. Finney, Jr., Ruben L. Gray, Sumter, S. C., Matthew J. Perry, Columbia, S. C., Carl Rachlin, New York City, for defendants.

SIMONS, District Judge.

This matter is before the court on motion of the State of South Carolina to remand the criminal prosecutions of the named defendants to the Court of General Sessions for Dorchester County, South Carolina.

On December 13, 1965, defendants filed a consolidated Petition for Removal, pursuant to 28 U.S.C. §§ 1443 and 1446, and to remove the criminal proceedings commenced against them in the Court of General Sessions of Dorchester County, South Carolina to this court. The petition was signed by counsel and verified by each defendant.

Included with the removal petition was a petition for Writ of Habeas Corpus and for leave to proceed in forma pauperis. Attached was copy of arrest warrant for both petitioners issued by Mr. A. A. Walling, Magistrate, Dorchester County, charging petitioners with violation of Section 16–555.1, Code of Laws of South

Carolina for 1962,[1] by contributing to delinquency of minors by enticing said minors not to attend school and sitting and marching on and near the school grounds and being in a group of pickets on and near the Williams Memorial School at St. George, S. C.

The defendants substantially allege in their petition that they are being criminally prosecuted in the South Carolina State Courts because they are "civil rights workers"[2] in Dorchester County participating in programs to encourage Negroes to register to vote, and participating in picketing activities to end all vestiges of racial segregation in the county. Petitioners allege that such state action is violative of rights guaranteed under the First and Fourteenth amendments to the United States Constitution and of the statutory laws of the United States providing for equal rights of all citizens.

They seek to vest this court with jurisdiction pursuant to the provisions of 28 U.S.C. § 1443(1) and (2).

At the time the petition for removal was filed with the court, a hearing was held with counsel for petitioners and an assistant Attorney General for the State of South Carolina being present. At this time the court was advised that petitioners were being held in the county jail of Dorchester County pending posting of a $5000 bond. The court issued its writ of habeas corpus pursuant to 28 U.S.C. § 1446(f) to respondents to deliver petitioners into federal custody to appear at the hearing on the motion to remand.[3] At this time the Assistant Attorney General made oral motion to remand the proceedings back to the state court and date was set to hear the motion in Charleston, S. C. on December 22, 1965. It was thereafter changed to January 6, 1966.

Attorneys for the State of South Carolina subsequently filed an answer to the petition for removal dated January 5, 1966, asserting that petitioners can enforce any rights and receive equal treatment in the state court and that the motion to remove is premature in that no indictments have ever been returned with a true bill from the grand jury.

After having heard oral argument from counsel for the parties, studied the brief in support of the motion submitted by counsel for petitioners, and reviewed the early decisions of the United States Supreme Court and later pronouncements of inferior courts concerning the jurisdic-

1. "§ 16–555.1. *Contributing to delinquency of a minor.*—It shall be unlawful for any person over twenty-one years of age to knowingly and wilfully encourage, aid or cause or to do any act which shall cause or influence a minor:

"(1) To violate any law or any municipal ordinance;

"(2) To become and be incorrigible or ungovernable or habitually disobedient and beyond the control of his or her parent, guardian, custodian or other lawful authority;

"(3) To become and be habitually truant;

"(4) To without just cause and without the consent of his or her parent, guardian or other custodian, repeatedly desert his or her home or place of abode;

"(5) To engage in any occupation which is in violation of law;

"(6) To associate with immoral or vicious persons;

"(7) To frequent any place the existence of which is in violation of law;

"(8) To habitually use obscene or profane language;

"(9) To beg or solicit alms in any public places under any pretense;

"(10) To so deport himself or herself as to wilfully injure or endanger his or her morals or health or the morals or health of others.

"Any person violating the provisions of this section shall upon conviction be fined not more than three thousand dollars or imprisoned for not more than three years, or both, in the discretion of the court.

"This section is intended to be cumulative and shall not be construed so as to defeat prosecutions under any other law which is applicable to unlawful acts embraced herein."

2. Defendant Davidman is a white "civil rights worker" from Brooklyn, N. Y.; defendant Lee is a Negro.

3. Bond was reduced to $1000 to guarantee appearance of defendants in Federal Court and was subsequently posted for each defendant.

tion of the federal court on removal petitions, it is my opinion that this court is without jurisdiction and the cases must be remanded to the Court of General Sessions for Dorchester County, South Carolina.

 Although petitioners strenuously urge that this court should assume jurisdiction and retain the case under the provisions of 28 U.S.C. § 1443(2) [4], it is well settled that under the averments contained in the petition for removal this argument is without foundation. It has been held unequivocally that § 1443(2) applies only "to federal officers and those assisting them or otherwise acting in an official or quasi-official capacity." City of Chester v. Anderson (Com. of Pennsylvania v. Anderson et al.), 347 F.2d 823 [3rd Cir. 1965]; Peacock v. City of Greenwood, 347 F.2d 679 [5th Cir. 1965]. In People of State of New York v. Galamison, 342 F.2d 255 [2nd Cir. 1965], cert. den., 380 U.S. 977, 85 S.Ct. 1342, 14 L.Ed.2d 272, the court considered the question and although it expressly refrained from deciding whether § 1443(2) is so limited, it stated that even if a private person could invoke the provisions of § 1443(2) such person "must point to some law that directs or encourages him to act in a certain manner, not merely to a generalized constitutional provision that will give him a defense or to an equally general statute that may impose civil or criminal liability on persons interfering with him."

In *Galamison,* supra, the court concluded that private persons engaged in "equal rights" demonstrations such as

these defendants at the time of the alleged violation are not acting under "color of authority" so as to entitle them to the removal rights under § 1443(2). As stated by the court at 342 F.2d at 265:

> "Although alleged denial of equal protection in schools and other respects afforded the motivation and was the subject of appellants' acts, neither the equal protection clause nor § 1981 confers 'color of authority' to perform acts which a state alleges to be in violation of laws of general application intended to preserve the peace from disturbance by anyone. The constitutional provision and the statute are addressed to preventing inequality in the treatment of conduct, and to that great purpose alone. They give no constitutional defense, let alone 'authority,' for disregard of laws providing for the equal punishment of disturbers of the peace simply because the disturbances were in the course of protests over alleged denial of equality in schools, housing or economic opportunity—any more than the Second Amendment bestows 'authority' to disturb the peace in the course of a protest over an alleged denial of the right to keep arms or the Fourth Amendment does so with respect to a protest over police methods."

 Counsel for petitioners admit that jurisdiction of this court cannot be invoked pursuant to § 1443(1) [5] unless petitioners have been denied, or cannot enforce in the state court, their equal

---

4. 28 U.S.C. § 1443(2) provides: "Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending: * * * (2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law."

5. 28 U.S.C. § 1443(1) provides: "Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending: (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof."

civil rights guaranteed by federal law. In Com. of Kentucky v. Powers, 201 U.S. 1, 26 S.Ct. 387, 50 L.Ed. 633 [1906] the United States Supreme Court clearly pronounced that only deprivations of civil rights resulting from discriminatory state legislation provides cause for removal under § 1443(1); and that unlawful or discriminatory application of state laws by state and local officials does not provide sufficient cause for removal. Com. of Kentucky v. Powers has never been overruled and has been closely adhered to by the federal courts until the recent decisions rendered by the Fifth Circuit Court of Appeals during 1965 beginning with Rachel v. State of Georgia, 342 F.2d 336 and Peacock v. City of Greenwood, 347 F.2d 679. In these decisions the Fifth Circuit simply refused to follow the decisions of the United States Supreme Court construing the civil rights removal statutes from Strauder v. State of West Virginia, 100 U.S. 303, 25 L.Ed. 664 [1879] to Com. of Kentucky v. Powers, supra, insofar as § 1443(1) is concerned and declares that the removal statutes may be used to vest jurisdiction in the federal courts where non-discriminatory state statutes are used to deprive individuals of their civil rights.

The Court of Appeals, Second Circuit,[6] and the Court of Appeals, Third Circuit,[7] have continued to follow the dictates of the Supreme Court culminating in Com. of Kentucky v. Powers, supra. The Fourth Circuit Court of Appeals is presently considering the question in Baines v. City of Danville, No. 9080 and McGhee v. City of Danville, No. 9082. Suffice it to say that this court will continue to follow the dictates of the United States Supreme Court in Com. of Kentucky v. Powers, until a decision to the contrary is rendered by the Fourth Circuit Court of Appeals.

In accordance with the foregoing this court ruled at the time of hearing the motion to remand that petitioners had the burden to prove that (1) they were being denied their equal civil rights, within the meaning of the removal statutes, by discriminatory state legislation, or (2) they could not enforce their federally protected civil rights in the state courts.

 Petitioners concede that the statute under which they are being prosecuted is not discriminatory on its face, and does not discriminate on the basis of race or color. They attempted to prove that they could not get a fair trial and protect their civil rights in the Court of General Sessions for Dorchester County because the community is hostile towards them as civil rights workers. It is certainly undisputed that petitioners have engaged in activities unpopular to a large segment of the population of Dorchester County, and from the attitude and demeanor of Mr. Davidman who testified at the hearing it is understandable that many good citizens of Dorchester County, or elsewhere, would find him personally obnoxious regardless of the causes he might embrace. Nevertheless, petitioners have failed to convince this court that they cannot enforce any of their civil rights in the state court and have a fair trial, or that they have been refused or cannot invoke all pretrial procedures in the state court such as change of venue motions, reduction of bond, etc., which they have not sought to pursue. Furthermore, if defendants are tried in the Court of General Sessions for Dorchester County, a state Circuit Judge will preside at the trial and this court personally knowing all of the State Judges to be dedicated, unbiased jurists of the highest calibre has no hesitancy in stating that defendants will receive a fair and impartial trial in their court regardless of a hostile community and all and any of their civil rights will be fully protected.

 At the hearing counsel for petitioners attempted to argue the unconstitutionality of the state statute under

---

6. People of State of New York v. Galamison, 342 F.2d 255 [1965].

7. City of Chester v. Anderson et al., & Commonwealth of Pennsylvania v. Anderson et al., 347 F.2d 823 [1965].

which they are charged on various grounds such as vagueness, ambiguity, etc. The court declined to consider such allegations in connection with the motion to remand in that the constitutionality of the statute involved may be raised as a defense at the time of the trial of the case but is not an issue before this court on a motion to remand. The removal statute is concerned only with the violation of equal rights contemplated by the civil rights statutes as interpreted by the courts and is not concerned with statutory deficiencies, except as such statutes may discriminate on the basis of race or color, or with alleged violations of due process, freedom of speech, etc., which may be guarded by constitutional provisions or various federal laws, but which are not encompassed within the meaning of civil rights as used in the removal statute. People of State of New York v. Galamison, supra; Peacock v. City of Greenwood, supra.

■ Furthermore, petitioners can only be tried on an indictment returned by a grand jury for the Court of General Sessions for Dorchester County, not on a local arrest warrant. The charges pending against petitioners have never been presented to a grand jury, consequently the petition for removal is premature because the pending criminal prosecution has not been "commenced in a State Court" within the meaning of the removal statute. Com. of Virginia v. Paul, 148 U.S. 107, 13 S.Ct. 536, 37 L.Ed. 386 [1892]. In Com. of Virginia v. Paul, the Supreme Court considered the question of when a criminal prosecution is deemed to be commenced within the meaning of the civil rights statutes passed by the Reconstruction Congress. The Court said at page 121, 13 S.Ct. page 541:

"The true rule on this subject, as it appears to us, was forcibly and accurately expressed by Mr. Justice Grier in a case removed from the court of quarter sessions of Bucks county, in the state of Pennsylvania, before indictment found, into the circuit court of the United States for the eastern district of Pennsylvania under the act of Congress of March 3, 1863, c. 81, § 5, (12 Stat. 756) since incorporated in section 641 [8] of the Revised Statutes, and which, though differing from the statute now in question in requiring the petition for removal to be originally filed in the state court, yet, in substantial accord with this statute, provides that 'if any suit or prosecution, civil or criminal, has been or shall be commenced in any state court against any officer, civil or military, or against any other person,' for any such act as is therein described, done by virtue or under color of authority of the United States, the defendant may file a petition 'for the removal of the cause for trial at the next circuit court of the United States to be holden in the district where the suit is pending.' Mr. Justice Grier, after quoting these words, ordered the case to be remanded to the state court, for the following reasons: 'The petition of the defendants brings their case fully within the provisions of this section, but the removal is premature. The prosecution has not been commenced in the state court. A warrant has been issued by a justice of the peace, and the defendants have been arrested preparatory to the commencement of a prosecution in the state court, but the attorney for the Commonwealth has not sent a bill to the grand jury. We do not know, therefore, whether the Commonwealth of Pennsylvania intends to prosecute the defendants for the alleged offence, or whether the grand jury will find a bill, without which the prosecution cannot be said to be "commenced in the state court." The act contemplates the removal of a prosecution "pending," that a "trial" may be had in the circuit court. If the attorney of the United States

8. Section 641 of the Revised Statutes has evolved into present Sec. 1443 of Title 28 U.S.C.A.

were required to send a bill of indictment before a grand jury of the United States court for a breach of the peace of the state, it would present a truly anomalous proceeding. Yet without it there would be no case to try in the circuit court. If a bill of indictment had been found in the state court, it would have presented such a case; but until this is done there is no case pending in the court of Bucks county, which can be removed to this court for trial.'" Commonwealth v. Artman, 3 Grant, 436, S. C. 5 Phila. 304.

The court has heretofore issued its writ of habeas corpus to the Sheriff of Dorchester County to surrender custody of the said defendants unto the United States Marshal. This writ having been issued as ancillary to a removal of the prosecution into the federal court pursuant to 28 U.S.C. § 1446(f) and not an ordinary writ of habeas corpus for the discharge of the said defendants requiring a judicial determination by the court, the remanding of the cause to the Court of General Sessions for Dorchester County conveys to the State of South Carolina the right to the custody of the prisoners. Com. of Virginia v. Paul, supra.

In accordance with the foregoing it is therefore

Ordered that prosecution of the State of South Carolina against Leonard Davidman and Nathaniel Lee be, and it hereby is remanded to the Court of General Sessions for Dorchester County, South Carolina. It is further

Ordered that the said Leonard Davidman and Nathaniel Lee surrender themselves to the United States Marshal at Charleston, South Carolina on or before 12:00 o'clock noon Monday, February 21st, 1966; the Marshal shall then deliver the defendants forthwith to the Sheriff of Dorchester County.

Let a copy of this order be served upon the defendants and Pink Brown, Rock Hill, South Carolina, surety on the appearance bond for said defendants.